IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ROBERT CERNIGLIA<br><br>                 Plaintiff,<br><br>        vs.<br><br>COUNTY OF SACRAMENTO; SHERIFF<br>LOU BLANAS; DEPUTY MENDOZA;<br>and DEPUTY KREMKIN,<br><br>                 Defendants. | No. 2:99-cv-01938-JKS-DAD<br><br>MEMORANDUM DECISION<br>AND ORDER<br>[Re: Motion at Docket No. 156] |

I.  MOTION PRESENTED

Plaintiff Steven Robert Cerniglia was convicted of sexual abuse of a child and served a term of imprisonment. Upon his release he was committed for a two-year term as a Sexually Violent Predator ("SVP") under California's Sexually Violent Predator Act ("SVPA"), Cal. Welfare & Institutions Code §§ 6600, *et seq*. At the completion of that two-year term and at the expiration of each two-year increment thereafter, Cerniglia was recommitted. He is currently committed to the Coalinga State Hospital. Each commitment is based in part on a finding that Cerniglia cannot control his behavior and as such presents a substantial risk of violence to others. In 1999, after completing his first two-year commitment as a SVP, and while awaiting proceedings to determine whether he should be recommitted, Cerniglia was housed in the Sacramento County jail in total separation ("T-Sep"). He brings this action seeking damages under 42 U.S.C. § 1983 arguing that the conditions of his confinement violated his constitutional rights because his confinement was more onerous than confinement suffered by other civil detainees and pre-trial detainees, and the Defendants could not justify the difference by reference to non-punitive institutional needs. This Court granted Defendants summary judgment based upon qualified immunity. The Ninth Circuit agreed with Cerniglia, reversed and remanded the case for trial.

At Docket No. 156 Plaintiff Steven Robert Cerniglia has moved *in limine* for an order precluding the introduction of any evidence of his status as a "Sexually Violent Predator." At Docket 191 Defendants opposed the motion, to which Cerniglia replied at Docket No. 206. Unfortunately, in the meantime this court entered an order granting Cerniglia summary judgment on certain liability issues leaving only damages for trial. The briefing on the motion *in limine* does not directly address damages. Upon review of the moving and opposing papers, the Court has determined that oral argument at this time would not assist the Court to reach a decision.

## II.  NATURE OF THE ACTION/BACKGROUND

Cerniglia, initially proceeding *pro se*, brought this civil rights action against the County of Sacramento, its sheriff and several deputy Sheriffs pursuant to 42 U.S.C. § 1983. He challenges the conditions of his confinement, alleging that he was placed in T-Sep during the entire time he was awaiting court proceedings related to his re-commitment as a SVP.[1] As a result he further alleges he lacked socialization with the other prisoners, access to television and telephone in the dayroom, had limited outdoor exercise, and had cold food when he returned from court because all food was prepared and distributed at 3:00 p.m. and Cerniglia did not return from court until after 4:00 p.m. In addition, he was required to shower in a dirty shower stall and subjected to strip searches when returning to the institution from court. Also, as a result of being in T-Sep, Cerniglia was not permitted to attend religious services with the other inmates.

Cerniglia was convicted of child sexual abuse on two separate occasions involving different children. *See* Cal. Pen. Code § 288(a). Cerniglia was sentenced to probation for the first conviction, which was revoked due to a probation violation and resulted in an additional sentence of six years of imprisonment. For the second conviction he was sentenced to 11 years of imprisonment. Once Cerniglia served his terms of imprisonment, he was placed on parole and released into the community. Shortly thereafter, he was arrested in connection with the State's

---

[1] " 'Sexually violent predator' means a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1).

contention that he is a SVP. As relevant to this action, Cerniglia has been committed twice, each time for the two-year period specified in the Sexually Violent Predators Act (SVPA). *See* Cal. Welf. & Inst. Code §§ 6600, *et seq*.[2] His first commitment occurred June 16, 1997, after a jury trial in the state superior court. His re-commitment occurred on June 16, 1999. In this action, Cerniglia challenges the conditions of his confinement during the period May 6, 1999, to July 27, 1999, when, pursuant to statute, he was housed in the Sacramento County Jail while awaiting a determination at his re-commitment hearing.

On November 30, 2004, this Court granted Defendant's motion for summary judgment on the basis that the Defendants were entitled to qualified immunity and entered final judgment in their favor. Docket Nos. 90, 91. Cerniglia appealed to the Ninth Circuit, which resulted in reversal and remand for further proceedings in light of *Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004), and *Hydrick v. Hunter*, 466 F.3d 676 (9th Cir. 2006).[3] Docket No. 98. The Court appointed *pro bono* counsel for Cerniglia, reopened discovery on a limited basis and granted leave to both parties to file motions for summary judgment addressing liability. The parties, in compliance with that order, filed cross-motions for summary judgment. Cerniglia also filed the instant motion *in limine*.

On April 18, 2008, this Court entered its order denying summary judgment to defendants, finding that, based upon the evidence in the record, the placement of Cerniglia in T-Sep did not promote a legitimate penological goal. Docket 210. In that same order, the Court granted, in part, Cerniglia's motion for summary judgment. The Court entered summary judgment in favor of Cerniglia, reserving for trial thereon the issue of damages, on the following causes of action: (1) First Cause of Action (Violation of First Amendment Rights), as against Defendants Sheriff Lou Blanas and the County of Sacramento; (2) Second Cause of Action (Fourth Amendment Rights), as against Defendants Deputy Mendoza, Deputy Kremkin, Sheriff Lou Blanas, and the

---

[2] California Penal Code § 288(a) is one of the predicate criminal acts triggering the operation of the SVPA. Cal. Welf. & Inst. Code § 6600(b).

[3] At t the time the Ninth Circuit rendered its decision in this case, a petition for rehearing was pending in *Hydrick*. Since that time a rehearing was granted and a superceding opinion entered. 500 F.3d 978 (9th Cir. 2007), *cert. pending*.

County of Sacramento; (3) Sixth Cause of Action (Procedural Due Process) as against Defendants Deputy Mendoza, Deputy Kremkin, Sheriff Lou Blanas, and the County of Sacramento; and (4) Seventh Cause of Action (Substantive Due Process) as against Defendants Sheriff Lou Blanas and the County of Sacramento.  Those causes of action were dismissed as to all other defendants.  The Court also dismissed the Tenth Cause of Action (Invasion of Privacy) in its entirety.

### III.  ISSUE PRESENTED

Is the fact that Cerniglia is a "Sexually Violent Predator" sufficiently prejudicial to outweigh its probative value, if any, to the issues to be presented to the jury at trial?[4]

### IV.  FACTS

The facts are well known to the parties and are set forth in detail in the Court's April 18, 2008, Memorandum Decision at Docket No. 210 and, in the interests of brevity, are not repeated here.

### V.  APPLICABLE STANDARD

The motion brings into play Federal Rules of Evidence 401, 402, and 403.

> Rule 401. Definition of "Relevant Evidence"
>
> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
>
> Rule 402. Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible
>
> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.
>
> Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time

---

[4] Defendants do not appear to dispute that evidence of the underlying convictions is not admissible for impeachment purposes under Federal Rule of Evidence 609 and, therefore, concede that point.

>Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403...."  *United States v. Abel,* 469 U.S. 45, 54 (1984).

## VI.  DISCUSSION

Applying Rule 403 in the context of this case requires a three-step analysis.  First, it must be determined if the proffered evidence tends to make the existence of some fact of consequence in the case more probable or less probable.  Fed. R. Evid. 401.  If it is relevant, unless otherwise excluded, it is admissible, but if not relevant it is inadmissible in any event and there is no need to proceed further.  Fed. R. Evid. 402.  The second step is to determine whether admission of the proffered evidence has a prejudicial effect.  If it does not, Rule 403 is not triggered and the Court need proceed no further.  If it does, the Court must proceed to the third step: weighing and balancing its probative value against its prejudicial effect to determine whether its probative value is substantially outweighed by its prejudicial effect.  While the need for the evidence—that is the availability of other evidence to prove the same fact in issue—should be weighed along with its probative value to determine whether it should be admitted under Rule 403, the need for the evidence does not make the evidence more likely to prove that which it is offered to prove.  There may be no evidence which proves the point the person proffering the challenged evidence wishes to prove.  Probative value and need for the evidence are separate considerations that weigh in favor of admission under the Rule 403 balancing test.  *See* Fed. R. Evid. 403 advisory committee's note (stating that the rule involves "balancing the probative value of *and* need for the evidence against the harm likely to result from its admission") (emphasis added).

Taking the first step: How does Cerniglia's status as a SVP have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"?  Defendants contend that the evidence is relevant with respect to two issues.  First, "plaintiff's status as a 'Sexually Violent Predator' is

essential to determination of whether the conditions of Cerniglia's confinement were reasonably related to legitimate, non-punitive governmental interests such as security concerns." Second, "plaintiff's status as a 'Sexually Violent Predator' is crucial to a determination of whether defendants are entitled to qualified immunity." The Court addresses these *in seriatim*.

In its Memorandum Decision and Order [Docket Nos. 139 and 144] entered April 18, 2008, at Docket No. 210, the Court rejected Defendant's contention that retaining Cerniglia in T-Sep was related to a legitimate, non-punitive governmental interest.[5] Thus, further consideration of that issue is foreclosed and any evidence proffered to prove or disprove its existence is of no further consequence to the determination of the action. Consequently, Cerniglia's status as a SVP is not admissible under Rules 401 and 402 with respect to that fact. Consideration of Rule 403 is unnecessary and the Court need not proceed any further in its analysis.[6]

On November 30, 2004, this Court granted Defendants' motion for summary judgment on the basis that the Defendants were entitled to qualified immunity and entered final judgment in their favor. On appeal, the Ninth Circuit reversed and remanded the matter for further proceedings in light of *Jones* and *Hydrick*. The issue of qualified immunity was not before the Ninth Circuit in *Jones*, consequently it did not address the issue. Qualified immunity was, however, before the Court in *Hydrick*. In this case the Ninth Circuit concluded that *Hydrick* precluded a finding of qualified immunity. That decision is the law of the case and controls further proceedings in this case.

In their opposition, relying on and quoting in part the Findings and Recommendations of the magistrate judge in *Meyers v. Pope*, 2006 WL 1867656, * 9–10 (E.D. Cal., July 5, 2006),

---

[5] The Court notes that briefing on this motion was completed prior to the entry of the Memorandum Decision and Order at Docket No. 210. The record may not, therefore, be sufficiently developed to permit a complete evaluation of the motion *in limine*.

[6] In the Joint Pretrial Conference Statement filed at Docket No. 212, Defendants implicitly acknowledge this is no longer at issue. Defendants' position is that, other than damages, the only issue remaining to be resolved at trial is whether or not the remaining Defendants are entitled to qualified immunity.

adopted by the district court, 2006 WL 2839843 (E.D. Cal., September 29, 2006),[7] Defendants argue that "they are entitled to qualified immunity based on the fact that the law regarding sexually violent predators, their placements in county jail and conditions of confinement were not clearly established at the time of plaintiff's detention at the Sacramento County Main Jail." Defendants point out that *Jones* was not decided until two years after the events in *Meyers* and four years after the events in this case. *Meyers* does not discuss the impact of *Hydrick*, which is understandable as *Hydrick* was initially decided only the day before the Findings and Recommendations of the magistrate judge were adopted, and two and half months after the magistrate judge made his Findings and Recommendations.

*Hydrick* undermines the central holding underpinning *Meyers*, *i.e.*, that the law was not clearly established at the time Meyers was detained. In analyzing qualified immunity with respect to the substantive due process claim and holding that it was clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs, 500 F.3d at 997, the *Hydrick* panel noted, 500 F.3d at 998, n.16 (emphasis added):[8]

> While *Jones*, *Neer* [*Andrews v. Neer*, 253 F.3d 1052 (8th Cir. 2001)], and *Seling* [*Seling v. Young*, 531 U.S. 250 (2001)] are more recent cases, they do little more than restate the contours of law clearly established in *Youngberg* [*Youngberg v. Romeo*, 457 U.S. 307 (1982)], a 1982 case, and *Bell* [*Bell v. Wolfish*, 441 U.S. 520 (1979)], a 1979 case. *Seling* essentially restates the *Youngberg* test, and *Jones* does little more than connect the line between *Youngberg* and SVPs based on California's argument that the statute should be construed as a civil confinement statute. *We believe a reasonable official reading Youngberg would have sufficient notice that they would be held to Youngberg's standards of due process*.[9]

---

[7] Presently on appeal to the Ninth Circuit.

[8] The Court notes that the superceding decision did not in any manner alter its earlier decision on this point, which contained the same footnote and accompanying text. *See* 466 F.3d at 699.

[9] Prior to *Hydrick* no district court dealing with California law concluded that the law was clearly established that SVP's should be treated as civil detainees. Nevertheless, the Ninth Circuit decision in this case forecloses further discussion of this issue in this case.

Given the fact that the Ninth Circuit reversed the earlier decision of this Court, which was decided solely on the basis of qualified immunity, and its express citation to *Hydrick*, the Court must conclude that the law of the case is that Defendants are not entitled to qualified immunity. Furthermore, the Memorandum Decision and Order entered April 18, 2008, at Docket No. 210, expressly entered judgment in favor of Cerniglia on the First, Second, Sixth, and Seventh Causes of Action. In opposing Cerniglia's motion for summary judgment, Defendants did not raise as a defense the issue of qualified immunity, perhaps recognizing that the issue was foreclosed by the Ninth Circuit decision in this case. Having failed to raise the defense of qualified immunity in opposition to Cerniglia's motion for summary judgment, Defendants have waived it. *See Image Technical Services Inc. v. Eastman Kodak Co.*, 903 F.3d 612, 615 n.1 (9th Cir. 1990), *aff'd sub nom.*, *Eastman Kodak Co. v. Image Technical Services*, 501 U.S. 451 (1992) (holding that plaintiff's failure to raise an issue in opposition to a defendant's motion for summary judgment waived the issue).

The sole remaining issue to be submitted to the jury at trial is for damages.[10] Although Cerniglia's status as a SVP is relevant to the fact as to why he was placed in T-Sep, which is no longer an issue of consequence in this case, it is of questionable relevance to the question of damages under the facts and law of this case as established by the Ninth Circuit. Presumably, Cerniglia's measure of damages will stem from the fact that, under the law as it existed at the time of his detention, Cerniglia should have been housed and treated as a civil detainee. The undisputed facts presented to the Court in connection with the cross-motions for summary judgment established that inmates housed in the Sacramento Main Jail were divided into five

---

[10] See Joint Pretrial Conference Statement. Docket No. 212. Cerniglia pleaded five Causes of Action in his Amended Complaint that are not otherwise referred to herein: Third: *Ex post Facto*; Fourth: Double Jeopardy; Fifth: Eighth Amendment cruel and unusual punishment; Eighth: Equal Protection; and Ninth: Sixth Amendment. Cerniglia's Third, Fourth, and Fifth Causes of Action were dismissed on September 23, 2002. Docket No. 42. No appeal was taken from that order and it remains the law of the case. Thus, the Third, Fourth, and Fifth Causes of Action are no longer before the Court. Cerniglia has to date taken no action to prosecute his Eighth and Ninth Causes of Action and the evidence introduced to date would not support judgment in his favor on those two causes of action. In the Joint Pretrial Conference Statement, Cerniglia has stated that there are no issues to be tried other than damages. Accordingly, the Court assumes that Cerniglia has abandoned the Eighth and Ninth Causes of Action and they are no longer at issue in this case.

segments: general population, protective custody, administrative segregation, total separation ("T-Sep"), and civil. Each classification carried different conditions of confinement, including the degree of isolation and availability of other amenities, *e.g.*, out-of-cell time, restrictions on visitation, dayroom usage. State law at the time, however, precluded SVPs, as civil detainees, from being housed with the general population.[11] It is also undisputed that Cerniglia was housed as a civil detainee without incident at the time of his initial commitment proceedings and Defendants admit that since that time, SVPs have been housed as civil detainees. Defendants have presented no argument that any classification, other than T-Sep or as a civil detainee was considered or, for that matter, available.[12] Cerniglia's damages are the monetary value of the difference between the conditions he would have been subjected to if detained and housed as a civil detainee and the conditions under which he was actually detained and housed in T-Sep.[13]

---

[11] Cal. Pen. Code § 4002 (1982). ("Persons committed on criminal process and detained for trial, persons convicted and under sentence, and persons committed upon civil process, shall not be kept or put in the same room ...."). In 1999 § 4002 did not differentiate between SVPs and other civil detainees. In 2001, § 4002 was amended with former § 4002 re-designated as § 4002(a) with minor amendments, and a new subsection (b) added that specifically addresses SVPs:

> (b) Inmates who are held pending civil process under the sexually violent predator laws shall be held in administrative segregation. For purposes of this subdivision, administrative segregation means separate and secure housing that does not involve any deprivation of privileges other than what is necessary to protect the inmates and staff. Consistent with Section 1610, to the extent possible, the person shall continue in his or her course of treatment, if any. An alleged sexually violent predator held pending civil process may waive placement in secure housing by petitioning the court for a waiver. In order to grant the waiver, the court must find that the waiver is voluntary and intelligent, and that granting the waiver would not interfere with any treatment programming for the person requesting the waiver. A person granted a waiver shall be placed with inmates charged with similar offenses or with similar criminal histories, based on the objective criteria set forth in subdivision (a).

[12] This Court is aware that child molesters are pariahs within prison population and must be segregated for their own protection. Defendants have not offered any evidence that SVPs are at risk if housed with civil detainees. The court also recognizes that California and other states having SVP laws consider such people more dangerous than the typical violent criminal and more likely to prey on weaker people housed with them. There is no evidence, however, that Cerniglia ever preyed on anyone during the substantial time he was housed in a secure setting.

[13] In *Jones* the court considered various classes of detainees and eventually concluded that SVPs have a constitutional right to be accorded treatment at least as good as pre-trial detainees and those civilly

(continued...)

Thus, the trial will consist of a comparison of those two housing situations during the time Cerniglia was in T-Sep.

Why Cerniglia was in T-Sep has, at best, marginal or tangential relevance to the measure of damages.  On the other hand, the potential prejudicial effect on a lay jury if it is made known to them that Cerniglia had been adjudged a Sexually Violent Predator is incalculable.  To the lay person the very words give rise to fear and loathing, if not revulsion.  In short, introduction of evidence of Cerniglia's status as a SVP creates a serious risk of inflaming the jury and prejudicing it against Cerniglia.  It is possible this could be alleviated in part by carefully crafted instructions explaining that adjudication as a SVP is based upon a clinically diagnosable mental disorder and that the SVPA has a dual purpose:  treatment as well as secure non-punitive

---

[13](...continued)
committed.  The court did not further differentiate between the treatment to which pre-trial detainees and the civilly committed were entitled to receive.  For comparative purposes the Court is presuming that when this case goes to trial the jury will be asked to compare the conditions governing T-Sep and those governing civil detainees and base its award of damages on that comparison.  The Court recognizes that there is some ambiguity in the Ninth Circuit's cases but has reached this conclusion based upon the *Jones* discussion that SVPs are entitled to the least restrictive environment and conditions feasible in light of legitimate institutional goals and responsibilities.  In Cerniglia's case this would seem to limit the state to treating him as a civil detainee since he had been treated as a civil detainee during the first interval between commitments apparently without incident.  The court is aware that Federal Rule of Evidence 407 precludes evidence of subsequent remedial measures to prove culpability.  An exception to the rule exists where feasibility of corrective measures is at issue.  Here a major issue was whether it was feasible to treat Cerniglia as a civil detainee during the interval between his SVP commitments.  Thus, the fact that Sacramento County currently houses SVPs between commitments as civil detainees coupled with Cerniglia's own prior treatment as a civil detainee, plus current California law that proscribes deprivation of privileges other than what is necessary to protect the inmates and staff, serves to establish feasibility.  If civil detainees are housed in the least restrictive environment, then Cerniglia was entitled to that environment in the absence of good institutional reasons.  Such reasons would have to go to prove that somehow such treatment would not be feasible.  Thus, the feasibility of treating Cerniglia as a civil detainee was the crucial liability question.  Since the defendants came forward with no evidence that Cerniglia as an individual or SVPs as a class could not be treated as civil detainees, even if such treatment required a new classification, summary judgment was entered in Cerniglia's favor on liability.  The extent to which different subclasses of civil detainees may be treated differently, or the extent to which civil detainees must be treated more favorably than convicted or pretrial detainees, has not been clearly established in the Constitutional context.  *See, e.g., Odom v. Kolender*, 2007 WL 4357675 (9th Cir. December 10, 2007) (unpublished) (holding in a case in which the SVP detainee was housed with the general population that the law regarding placement of civil detainees within the jail was not clearly established at the time of the alleged violation, citing *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005) (en banc) and *Jones*, but without reference to *Hydrick*).

MEMORANDUM DECISION AND ORDER
[Re:  Motion at Docket 156]
*Cerniglia v. County of Sacramento*, 2:99-cv-01938-JKS-DAD   10

confinement to protect the public. *See Hubbard v. Superior Court*, 969 P.2d 584, 601–03 (Cal. 1999) (explaining the intent, operation, and effect of the SVPA). The remedy may, however, tend to confuse the issues contrary to the dictates of Rule 403.

## CONCLUSION

There is a great deal of semantic confusion in the case law addressing the conditions under which SVP detainees may be housed. The Ninth Circuit is convinced that the Constitution requires that SVPs must be treated better than those convicted of crimes. Recognizing that such people have served their sentences, the courts have attempted to draw a distinction between punishment and secure confinement on the theory that criminals are sent to prison to be punished and SVPs are detained to be treated and secured during the treatment. Thus, SVPs must be protected from any measure that is punitive. There is the confusion. There may have been a time when men and women were sentenced to prison to be punished and while there were flogged and subjected to the rack, the thumbscrew and other fiendish instruments of torture in order to terrify them in the hopes that they would be deterred from future criminality by fear of returning to prison. This time has passed. It appears that modern penology views men and women being sent to prison *as punishment* rather than *to be punished*. The punishment consists in the separation from friends and family and being subjected to regimentation to maintain institutional discipline. Prison systems have different prison facilities to house different classes of prisoners based upon assumptions about how that prisoner will respond or has responded to prison. Those whose history suggests a risk of escape or the likelihood of violence within the institution will be subjected to closer security than those whose history is free of violence and whose institutional history has been free of problems. In contrast, those whose history is free of violence and who cooperate and obey orders tend to end up in less secure facilities. Thus the actual treatment a prisoner experiences will depend upon predictions about him based upon his known history and the correctional officer's experience with him in the institutional setting.

Thus, if the only real punishment to which the general prison population is exposed consists in separation from families and friends and being subjected to regimented living and the only additional "punishment" is imposed on those whose behavior warrants institutional discipline, it is difficult to see how one can distinguish between punitive and non-punitive

treatment in evaluating the treatment of SVPs.  SVPs like thieves and robbers who accept their placement, and conform to the rules of the institution, will probably do easy time while those who are disruptive and create problems will do hard time.[14]

Within the class of civil detainees there are probably large numbers of people who have no history of violence. Witnesses in protective custody as a class are probably not likely to be discipline problems in jail.  Many men and women who are mentally ill and a dangerous to themselves may be suicidal and unable to meet their subsistence needs but pose no risk to others.  Those who have minor histories of assaultive behavior might easily be controlled by medication and supervision.  In contrast, SVPs are defined as a class of the highly dangerous.  In a secure setting, they pose the risk that they will prey on others.  Thus, this Court in its initial approach to this and related cases looked at SVPs as a class and not as individuals and concluded that as a class the jail officials acted reasonably in subjecting them to strict supervision and minimal access to others.  It appears that all of the other district courts considering the issues reached the same conclusions.  The Ninth Circuit has taken a different view.  Prison officials, the Ninth Circuit is convinced, were on notice that SVPs as a class had to be treated better than convicted criminals as a class.  Since the treatment of convicted criminals in prison turns on their history for violence and their institutional behavior, this is a difficult standard to apply since SVPs have probably the worst individual history as a class.  The bottom line seems to be that SVPs should be (and should have been) treated as individuals and their institutional classification should have been based on reasonable expectations regarding their behavior within the institution.  Thus, if civil detainees have the least restrictions, SVPs should be treated exactly as civil detainees unless the correctional officials can point to specific evidence in the SVP's history and institutional behavior that warrant specific limitations.  Defendants have access to a great deal of evidence regarding Cerniglia's history and his institutional behavior.  He served a long prison sentence.  He had completed one two-year period as an SVP detainee at the time the issues in this case

---

[14] In order to eliminate the confusion we must recognize that the Ninth Circuit is using the term "punitive" as a term of art to mean "improper and, therefore, actionable."  Thus, where an SVP shows that he was subjected to one or more restrictions more onerous than those imposed upon civil detainees, the restriction or restrictions are actionable unless defendants go forward with the evidence to show that such restrictions are appropriate for a civil or pre-trial detainee similarly situated.

arose. It is undisputed that the conditions he experienced at Atascadero were not as onerous as those in T-sep. It is undisputed that conditions in T-Sep were more onerous than those to which pre-trial detainees and others in the general population were subjected. Defendants have presented no evidence which would permit an inference that housing Cerniglia as a civil detainee subject to the same privileges and restrictions would not have been feasible.[15] Therefore, this case devolves to a comparison of the treatment afforded Cerniglia and the treatment afforded civil detainees. Of course if, within the class of civil detainees, certain restrictions are imposed on persons similarly situated to Cerniglia without taking them out of the category of civil detainees, then those restrictions will need to be factored into the comparison. The current record does not permit further consideration of differences in the treatment of subclasses of civil detainees.[16] In sum, given the expected emotional reaction of lay jurors to SVPs, prejudice is clear and, given the likely issues at trial, SVP status would appear to have little probative value.

## VII.  ORDER

Based upon the foregoing, IT IS ORDERED THAT:

1. Cerniglia's Motion *in Limine* to Exclude Information Identifying Cerniglia as a "Sexually Violent Predator" and Related to His Underlying Convictions at Docket 156 is GRANTED; and

2. Defendants are prohibited and barred from introducing into evidence any document or testimony relating to, or making reference to, Cerniglia's status as a Sexually Violent Predator, or in making any reference to Cerniglia's status as a Sexually Violent Predator in front of the

---

[15] The Court recognizes that almost 10 years after the incident at issue in this case Cerniglia remains committed as a SVP. Presumably there is evidence supporting that result in this case; however, Defendants have never relied on such evidence to explain, much less justify, the restrictions about which Cerniglia complains. Defendants have sought to justify T-Sep and the restrictions it placed on Cerniglia solely on his membership in the class as a SVP. This, the Ninth Circuit says, cannot be done. As a class SVPs must be treated as civil detainees. Any restrictions imposed upon them must be consistent with restrictions placed upon other civil detainees (or pre-trial detainees) with similar backgrounds and history, including criminal history.

[16] Should additional evidence be introduced that changes the posture of the damage calculation, *i.e.*, the base level of treatment Cerniglia should have been afforded, it may be appropriate for the Court to reconsider its conclusion and order.

jury, including, but not limited to, any reference to the underlying criminal convictions for child sexual abuse.

Dated: June 17, 2008.

s/ James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>United States District Judge