IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ROBERT CERNIGLIA<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SACRAMENTO; SHERIFF LOU BLANAS; DEPUTY MENDOZA; and DEPUTY KREMKIN,<br><br>Defendants. | No. 2:99-cv-01938-JKS-DAD<br><br>ORDER<br>[Re:  Motion at Docket No. 219] |

At Docket No. 219 Defendants County of Sacramento, Sheriff Lou Blanas, Deputy Mendoza, and Deputy Kremkin, have moved this Court for reconsideration of its Memorandum Decision and Order granting Plaintiff Steven Robert Cerniglia's Motion *in Limine* entered at Docket No. 218.

Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher court in the same case. *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.1993).  However, the law of the case doctrine is not a shackle without a key.  As long as a district court retains jurisdiction over a case, it has inherent power to reconsider and modify an interlocutory order for sufficient cause. *City of Los Angeles, Harbor Div. v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001).  That inherent power is not unfettered: "the court may reconsider previously decided questions in cases in which there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995); *see also School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A prior decision is "clearly erroneous and would work a manifest injustice" where it conflicts with controlling law overlooked by the court. *Ibid*.

Defendants have not cited any intervening change in controlling authority nor have they pointed to any new evidence.  Accordingly, the sole remaining basis for this Court to reconsider its prior ruling is that it was clearly erroneous and would work a manifest injustice at the time it was entered.

Qualified Immunity.  In its orders this Court recognized that it had earlier granted a number of the Defendants qualified immunity on the theory that Sexually Violent Predators (SVPs) constituted a class that was *sui generis* and were, therefore, not the typical pre-trial detainees or civil committees whose status vis-a-vis sentenced prisoners had been addressed in prior cases regarding conditions of confinement.  As a result the Court concluded that the law governing conditions of confinement for SVPs was not clearly established.  The Court took confidence in this view because its research assured it that all of the District Courts that had addressed the issue found the law not clearly established.  Cerniglia appealed.  In the interim, the Ninth Circuit decided two published decisions in which it reached conclusions regarding SVPs, which a subsequent panel hearing the appeal in this case found to be inconsistent with the decisions reached by this Court.  Specifically, the panel determined that the decision in favor of the Defendants on the issue of qualified immunity had to be reversed.  While the panel did remand for further proceedings consistent with its decision, there is nothing in that decision that left open a window through which a subsequent qualified immunity claim could pass.  Bearing in mind that the qualified immunity defense is more than the right not to pay damages, it is a right not to be sued, consequently the defense must be heard pre-trial and an interlocutory appeal permitted from a decision denying the defense.  Here the defense was initially successful and an appeal taken resulting in an appellate decision overturning summary judgment in favor of Defendants.

This Court recognizes that the issue on appeal was the propriety of summary judgment on the issue of qualified immunity.  It was certainly possible that the appellate court might have reversed a judgment in favor of the Defendants because it concluded that there were disputed issues of material fact upon which the immunity question depended.  Such questions might have been left for future determination by a jury before the defense could be adjudicated.  Alternatively, the court might have felt that the record required further factual development

which might permit future motion practice.  Here, however, the panel decision, which is the law of this case, did not address factual disputes or identify factual issues to be resolved on the question of qualified immunity.  Rather the panel concluded that controlling Ninth Circuit authority established that the law governing detaining SVPs was clearly established and that such detainees were entitled to be treated at least as well as pre-trial detainees while their commitment was pending and at least as well as sentenced prisoners after commitment and re-commitment.  In the panel's view, the burden was on a defendant having custody and control of a SVP to prove that a given burden which exceeded the burdens imposed on pre-trial detainees where the issue was pre-commitment detention of a SVP and which exceeded the burdens imposed upon sentenced prisoners where the SVP had been committed was justified by institutional requirements of security and treatment.  Given this decision by the Ninth Circuit panel, this Court concluded that the panel had taken the qualified immunity issue out of the case and left only the question whether the Defendants could present facts which, if accepted by the jury, would justify each of the burdens which Cerniglia relied upon and which the panel and prior Ninth Circuit opinions had identified as problematical because not uniformly imposed upon pre-trial detainees and sentenced prisoners.  In the absence of justification, the burden would be deemed "punitive" and, therefore, wrongful, entitling the SVP to damages.

   In its decision on the motion *in limine*, the Court noted a certain ambiguity in the appellate court's use of the term "punitive."  It noted that under modern penology it is understood that men and women are not sent to prison to be punished, they are sent to prison as punishment.  The punishment consists in being removed from society including family and friends and placed in a secure environment subject to less privacy than men and women who are not in prison.  If a sentenced prisoner is subject to conditions greater than confinement itself it is because the individual presents security and related concerns not presented by the bulk of the prison population.  Once this is recognized, it is clear that the Ninth Circuit is using the term "punitive" as a term of art to describe the burden of proof regarding conditions of confinement for SVPs and other civil detainees.  A sentenced prisoner and a pre-trial detainee may challenge the conditions of their confinement as a violation of their civil rights.  At least as to sentenced prisoners the prisoner bears the burden of proof in the sense of both the burden of production and

the burden of persuasion to show that the burden complained about is not justified by institutional concerns.  In contrast, where a civil committee including a SVP challenges conditions of confinement and can show that he/she was subjected to greater restrictions than the average sentenced prisoner, he/she is entitled to damages unless the Defendants can prove that the additional restriction was justified on an individualized basis.

Defendants argue that they did not waive the defense of qualified immunity by failing to assert it as a defense to Cerniglia's motion for summary judgment.  Defendants argue that this Court's orders precluded them from raising the issue because its prior order authorizing them to file a dispositive motion limited it to a legitimate penological basis, which precluded them from raising the qualified immunity defense.  [Docket No. 114]  In a subsequent order, the Court authorized Cerniglia to file a motion for summary judgment on the issue of liability alone. [Docket No. 138]  Although the Court had not previously granted Defendants leave to file a motion for summary judgment based upon qualified immunity,[1] nothing in its orders precluded Defendants from raising any applicable defense to Cerniglia's motion for summary judgment. Candidly, this Court did believe, for reasons previously discussed in this opinion, that the Ninth Circuit panel had removed qualified immunity from this case.

Even if the Court's prior orders discouraged Defendants from raising the issue of qualified immunity in opposition to Cerniglia's motion for summary judgment, negating waiver, the Court in granting Cerniglia's motion *in limine*, made clear that, under the law of the case, Defendants were not entitled to qualified immunity.  [Docket 218, pp. 5–8]  Nothing in Defendants' motion for reconsideration convinces this Court that its ruling on the issue of qualified immunity was clearly erroneous.

Damages.  As was noted by the Court in its order granting the motion *in limine*, Defendants did not argue that Cerniglia's status as a SVP was relevant to the issue of damages.

---

[1] The Court also notes that in the Joint Status Report [Docket No. 113] as well as the earlier status report filed by Defendants [Docket No. 104], Defendants appear to acknowledge that the qualified immunity defense was decided adverse to it and requested only that it be permitted to file a dispositive motion on the issue of legitimate non-punitive penological interest justified placing Cerniglia in T-Sep.  It does not appear from the record in this case that at any time did Defendants request leave of the Court, let alone denial of such leave by the Court, to address the issue of qualified immunity after remand from the Ninth Circuit.

Nonetheless, the Court addressed that issue *sua sponte*. Defendants argue that in opposing the motion *in limine* they did not address damages in light of the pending cross-motions for summary judgment, which were limited to liability. This argument fails because the motion *in limine* addressed the introduction of evidence of Cerniglia's status as a SVP *for all purposes*, which necessarily included introduction at trial on the issue of damages. Also, although the Court entered its decision on the summary judgment motions on April 18, 2008, which clearly held that this case was to go to trial on the issue of damages, Defendants made no effort to obtain leave of court to supplement their opposition to the motion *in limine* to include applicability to damages.

Defendants, in opposing Cerniglia's motion for summary judgment, defended their action on the basis that there was no "policy" *per se* as to the housing of SVPs, and that Cerniglia was placed in T-Sep as a temporary basis until Defendants could determine where and how to house SVPs. [Docket No. 167, p. 5]. Cerniglia was placed in T-Sep solely on the basis of his being a SVP *qua* SVP, *no other justification has been offered*. This, as the prior decisions of this Court have clearly indicated, the Supreme Court and the Ninth Circuit have held Defendants could not do as it violated Cerniglia's civil rights. In particular, there has been no evidence to date that Cerniglia as an individual poses any particular characteristics that compel housing other than as a civil detainee.[2] Defendants raise several hypothetical bases upon which Cerniglia's status a SVP may determine the measure of damages. None of these hypothetical situations are, as yet,

---

[2] The Court recognizes that the United States Supreme Court and the highest court of every state having a SVP act have justified the act on the assumption that SVPs pose a significant danger to the community. Generally, a sentenced prisoner no matter how heinous his crime and how dangerous mental health professionals opine he will be upon release is entitled to be released upon the completion of his sentence. In order to hold SVPs beyond this date, all of the courts agree that they are more dangerous and more in need of confinement than the most serious sentenced prisoner who has completed his sentence. Nothing in any of the supervening Ninth Circuit opinions disputes this. In part, this recognition explains why this Court made the error of considering SVPs *sui generis* and not members of the class of civil committees governed by case law addressing civil committees. Based upon Cerniglia's membership in the class SVPs this Court granted Defendants qualified immunity, which we now know was error. The Ninth Circuit does not dispute the fact that legislatures consider SVPs more dangerous than typical sentenced prisoners, the Ninth Circuit simply holds that a given committee's SVP membership is not relevant in justifying restrictions, which must be justified on a case specific basis. Of course the evidence upon which a person was adjudicated SVP might be highly relevant to his security status but he is entitled to an individualized determination of custody status.

supported by either positions taken by the parties or the evidence.  As the Court noted in its order at Docket 218, the assumed appropriate measure of damages is the difference in the treatment as a civil detainee versus his actual treatment housed in T-Sep.  That Order also left open the possibility of reconsideration should evidence be introduced that changes the posture of the damage calculation.  [Docket No. 218, p.13 n.16]  Should evidence be introduced to which Cerniglia's status as a SVP is relevant, the Court will entertain an appropriate motion to reconsider, made out of the presence of the jury, at that time.

The Court does not know what evidence Cerniglia will offer in support of damages.  It is possible that Cerniglia will complain of conditions which might have been imposed upon a civil detainee who was not a SVP because of evidence about that civil detainee's background that would also be true of Cerniglia.  The Court expects that it will learn more about security classifications of civil detainees as this case progresses.  At this point, Defendants will have to bring the matter up out of the presence of the jury before introducing evidence of Cerniglia's background relating to his prior convictions and institutional experience in order to assure that such evidence will be probative of an issue in the case and not introduced solely for the purpose of stigmatizing Cerniglia.

From the forgoing it should be clear that this Court has not definitively ruled out any evidence on the issue of damages.  It has granted an order *in limine* which precludes Defendants from offering evidence about Cerniglia's SVP status and the evidence including past convictions that lead to it unless the matter is brought up out of the presence of the jury and its probative value on an issue actually in controversy outweighs possible prejudice.  The Court is hesitant to address possible examples without hearing Cerniglia's case in chief

The Motion for Reconsideration at Docket No. 219 is DENIED, without prejudice.

Dated:  July 14, 2008

s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge
